IN THE

# SUPREME COURT

OF THE

## STATE OF LOUISIANA.

---

**WESTERN DISTRICT:**
OPELOUSAS, SEPTEMBER, 1833.

---

### ROBESON vs. ROBERT.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, THE JUDGE OF THE SIXTH DISTRICT PRESIDING.

A duly recorded sale of a tract of land, by a description applicable only to another tract, conveys *per se* no notice to a subsequent *bona fide* purchaser.

Although between the parties, the error in such a sale might be corrected, it can be regarded with respect to third persons, in no other light than a sale of other property.

This was a petitory action. The plaintiff claimed title to two tracts of land, by purchase from the heirs and legal representatives of the late William Brocus, by act under private signature, bearing date May 17th, 1825. The two tracts are described in the petition, as fronting on each side of the bayou Sallé, and as having been purchased about twenty years before, from John O'Reily and William Addison, one of them measuring twenty arpents, formerly owned by John O'Reily, and the other measuring fourteen arpents.

WESTERN DIS
September. 1833.
═══════
ROBESON
vs.
ROBERT.

The plaintiff amended his petition, limiting his claim to fourteen arpents, describing it as situated about three leagues below the Verdun settlement, on bayou Sallé, and containing six hundred and forty acres.

The defendant pleaded the general denial, and that he purchased the disputed premises at two sales, made by Lewis Moore, acting in one of them as the attorney in fact of William Addison, and in the other in his individual capacity, dated the 2d of July and 21st of September, 1816. He alleged that he had since been in possession of the premises, and had made valuable improvements thereon. He pleaded the prescription of ten, twenty and thirty years, and cited in warranty, Lewis Moore, as his vendor in both sales, and John Moore as his guarantee, in one of them. They appeared, denied the allegations of the petition, and their liability; and pleaded title in the defendant.

In his amended answer, the defendant avers, that the act of sale by Addison to Brown, in 1806, was not made by authentic act, nor was it ever recorded in the parish of St. Mary, where the land is situated.

The heirs and legal representatives of Brocus, intervened, and denied that their ancestor had alienated the land to either of the claimants, averred that he died seized of it, and that it descended to them by inheritance; denied that they had alienated it, or in any way disposed of it; and averred that the names of some of them, in the act alleged by plaintiff, were forged, and that others who signed it were minors, and that the sale was therefore null and void. The private act under which Brocus, the father of the ancestor of the plaintiff's vendors purchased, bears date on the 18th of March, 1806, and bounds the tract as follows: "A tract of land lying and being in the county aforesaid, (Attakapas) of fourteen acres front, on each side of the bayou Sallé, with the depth of which it may be susceptible, bounded below by the king's former domain, and above by the lands of Henry Harkirder."

The act by Brocus' heirs to the plaintiff, is dated 17th May, 1825, and describes the land as the tract which Wil-

liam Brocus purchased from William Addison, "containing fifteen arpents in front, on both sides of bayou Sallé, agreeably to the deed passed by the said Addison, to the sa d Brocus."

The defendant took a bill of exceptions to the decision of the judge *a quo*, admitting in evidence the act of sale by Addison to Brocus. The objection to it raised by the defendant, was, that it was an act *sous seing privée*, and therefore inadmissible. This act was signed by both the parties to it, in the presence of two witnesses, and at the bottom is written: "Taken and acknowledged before me, Edward C. Nicholls, judge of the county of Attakapas." The judge's certificate, likewise, states the act to have been "taken and acknowledged before him."

The two sales from Moore to Robert, were made by authentic act, and were recorded in the parish in which the land is situated.

The plaintiff and interpleaders showed only civil possession by the act of sale of 1806. Testimony was introduced, tending to show that both parties had claimed the land in controversy.

The defendant had a verdict and judgment, and the plaintiff appealed.

*Garland*, for plaintiff and appellant.

*Lewis*, for defendant and appellee.

*Brownson*, on the same side, contended that:

1. The deed to Brocus from Addison, dated in 1806, is not authentic; it was written and signed by the parties, and only acknowledged before a county judge.

2. Being an act *sous seing privée* the certificate of acknowledgment, as it does not make it authentic, cannot give to it the effect of a recorded act, and there is no special certificate. The act is simply acknowledged by a county judge.

3. In case the act should be considered authentic and of record, it does not describe the property sold ·o as to give notice to third persons of the alienation which the law intends they shall have.

4. Admitting error in the description could be corrected between the original parties, it cannot, as against a third person, who has bought in good faith, without a sufficient notice that the property had been sold.

PORTER J., delivered the opinion of the court.

The plaintiff and the interpleaders claim a tract of land from the defendant, in the right of one William Brocus, deceased, who they allege purchased it from a certain William Addison. The defendant on his part also sets up title from Addison. The cause below turned on the identity of the premises, which the respective parties acquired by virtue of their conveyances from their common vendor. The jury found for the defendant, and by the verdict negatived the identity, for the plaintiff's deed was first in time.

A new trial was moved for, on the ground that the verdict was contrary to law and evidence. The judge rejected the application, and gave judgment in pursuance of the verdict, from that judgment this appeal was taken.

The case has been argued here, on the same grounds it was contested below: namely, whether the land first sold by Addison, to Brocus, was the same as that subsequently conveyed by him to the defendants. The evidence taken presents no important contradictions, yet it leaves considerable doubts on the mind. If the case was between the heirs of Addison and the plaintiff's, it might perhaps be truly said, that the proof preponderated on the part of the latter, but it is not the heirs, but a third person who purchased *bona fide* sixteen years ago, and who has occupied and cultivated the premises ever since, who is before the court; and so considered, the case is by no means so simple and clear. The difficulty of reaching the truth, as to the land first conveyed, proceeds mainly from a totally erroneous description of the

boundaries, as given in the first deed of sale. By it the vendor is made to convey land lying nearly ten miles from the place where the *locus in quo* is situated, and where in fact he did not own any land. Although, preadventure, this error might be corrected between the parties, it appears to us that such a sale, admitting it to be duly recorded, conveyed *per se* no notice to a subsequent purchaser. It is a mere truism to say, and it would be superfluous to say it for any other purpose than that of more fully illustrating our ideas on this subject, that the recording the alienation of other property, than that subsequently sold, could have no effect against third persons. Lands are only known by their limits, or by natural or artificial objects on, or near to them, and a sale intending to convey property in one place and describing it in another, with limits different from that which really bounded it, can be regarded in no other light as to third persons, than a sale of other property. A deed of sale of a slave *William*, duly recorded, would not operate as notice to a second purchaser that the slave *John* had been sold, though it might be the intention of the parties to convey the latter, more particularly if, as in the case before us, actual possession did not follow the alienation to the first vendee.

Whether this consideration operated on the minds of the jury, or whether they concluded that Addison intended to sell land in the place mentioned in the first bill of sale, we cannot say, but on the whole, we are of opinion the verdict should not be disturbed.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed with costs.

WESTERN DIS
*September*, 1833.

ROBESON
*vs.*
ROBERT.

A duly recorded sale of a tract of land, by a description applicable only to another tract, conveys *per se* no notice to a subsequent *bona fide* purchaser

Although between the parties, the error in such a sale might be corrected, it can be regarded with respect to third per ons, in no other light than a sale of other property.